The action was continued nisi, and now, at this term, the opinion of the Court was delivered by
Parker, J.
[after reciting the facts.] Upon this state of facts, the plaintiff claims to recover, as for a total loss of ship and freight, upon the ground that his offer to abandon on the 25th of March while the ship was actually in possession of the captors, and undei legal process in the Admiralty Court, vested in him a perfect right to recover, which could not be impaired by any subsequent event not within his agency and control, and not produced by his consent.
The defendant denies that there ever was a total loss; but if there was, contends that the acquittal and restoration of the ship, her safe arrival at New York, delivery of her cargo and earning freight, are facts which change the total into a partial loss, for which only, he says, the plaintiff can recover in this action. And he contends this with more confidence, because, he says, that all these facts happened before the commencement of the plaintiff’s action, the writ not having been served until the 15th of September, although it appears to have issued some time before.
*214 On the question made by the counsel, whether the actual suing out of the writ, or the service of it, was the commencement of the action, no opinion need be given, as the decision of this cause rests upon a principle which renders a settlement of that question unnecessary.
That the capture of this vessel as prize, carrying her out of the course of her voyage, and libelling her as prize, gave the insured a right to abandon during the existence of those facts, and to claim for a total loss of ship and freight, can admit of no doubt. The only argument assumed by the defendant’s counsel upon this point is, that these facts, having happened through the interven- [ * 245 ] tian of a power in amity with * the United States, they do not constitute a capture in its technical sense, and that the ordinary consequences of a capture cannot flow from them.
But whether there was a technical capture or not, is immaterial in the present question, it being well settled that any detention by princes, by embargo, or otherwise, gives the insured a right to abandon, and claim as for a total loss, as well as a capture by enemies (6)
(7).
But it seems also well settled, that facts like those agreed in the present case do, between insurer and insured, constitute a capture, and draw after them all the consequences of a capture.
English and other foreign writers place the taking of a neutral ship upon the same footing, as it respects a contract of insurance, with the capture by an enemy, in open war.
For any loss occasioned by capture, whether lawful or unlawful, and whether by friends or enemies, the insurer is liable. He is also liable, whether the property in the thing insured be changed by the capture or not (8).
If a neutral ship be taken, and carried into the port of a belligerent, under pretence that she belongs to the enemy, or is laden with enemy’s goods, this is a capture, because it is done as an act of hostility; and if she be afterwards restored, still it must be considered a capture (9).
The assurer is held, whether the capture be just or unjust, whether it is caused by hostility, or be for plunder ; for in whatever manner it is done, it is a marine accident, or peril of the sea; and the insurer is held for all perils of the sea (10).
Valin, also, in his commentary on the 26th article of the ordi nonce of Louis 14th, says, the assurers are answerable, not only for captures made by enemies, but even for those which are unjustly *215 made by friends, whether allies or neutrals; in one word, for all captures made by reason of hostility, robbery, or otherwise.
The taking of this ship being with intention to make prize of her, as is proved by her being libelled as prize, and as is agreed in the case, there can be no pretence but it was a * capture within the principles laid down by the [ * 246 ] eminent writers before cited. This capture constituted a total loss of vessel and freight, if the insured chose to consider it during its continuance, by abandoning his interest therein to the underwriters. Had he neglected to abandon, until after the restoration of the ship to the master or supercargo, he would have waived his right to consider the capture a total loss. But it appears here, that the offer to abandon was during the detention of the ship by the captors, and while she was under admiralty process. His right, therefore, became vested, and was perfect; and the only question which can admit of an argument is, whether the subsequent restoration, without any act on his part showing an intention to waive the right acquired by the abandonment, shall change this total into a partial loss.
And here the defendant contends, that as the ship was restored to the master, who, under direction of the supercargo, navigated her to New York, where she safely delivered her cargo, and earned her freight, before the commencement of this action, the loss, if ever total, had become partial; and that, according to Lord Mansfield''s doctrine, in the case of Hamilton vs. Mendes, the plaintiff ought to recover only for the damage actually sustained.
The doctrine thus advanced by Lord Mansfield is less accurately stated than was usual for that great man upon subjects of this nature ; and indeed, if true in the sense assumed by the defendants, militates with principles which he has established with much more precision, and greater strength of reason.
It should be remembered, too, that in the case he was then considering, there was no abandonment until the temporary restraint upon the ship had ceased, and she had resumed the course of her voyage, and indeed nearly terminated it. The doctrine contended for by the assured in that case was, that the capture alone, without condemnation,- and without abandonment, during its continuance, was a total loss. This doctrine he entirely and justly discountenanced, and then expressed his doubts, whether, to entitle the plaintiff to recover, the loss should not continue total up to the lime of *the commencement of the action. It does not [ * 247 j appear that, had there been an abandonment while the capture continued, he would not have considered the total loss as continuing.' Indeed, I see nothing in that case, from which it is to *216 be inferred, that a vested right does not accrue to the insured, after abandonment m case of capture, although the vessel be afterwards restored.
It appears to be perfectly well settled, taking the whole course of English authorities upon the subject of insurance into view, that whenever a total loss, in the legal contemplation of the phrase, has accrued, an abandonment or offer to abandon, by the insured, gives a vested right to claim for such total loss, and throws the property upon the assurer.
It appears, also, that in such case, the master, or whoever has charge of the property, becomes instantly, upon abandonment, the agent of the assurer, that the earnings of the ship belong to him, and that, where the cargo is insured, the rise and fall of the market is at his hazard, and to his benefit; so that, upon abandonment seasonably made or offered, the only question would seem to be, whether a right to abandon existed at the time; and if it did, the relation of the parties to the property is fixed by that act, unless where the assurer does not accept, and the-assured waives his right' which has been done in this case (11).
If this doctrine be not true, but the rights of the parties are held to be uncertain and fluctuating, after a regular abandonment under circumstances which, by the laws of insurance, constitute a total loss, there seems to be no reason why the commencement of the action should be fixed upon as the period when this uncertainty is to cease, rather than the time of rendering the verdict; for until then, if it is upon principles of equity, the door is kept open, and there is opportunity for an equitable adjustment. But how great the inconvenience would be to the public, and to the parties to the contract, that the degree of responsibility of the insurer should not be known, until the end of a lawsuit is attained, must be obvi pus to every one who considers the importance of having some legal owner of the property abandoned, to prevent its waste and destruction. In the mean time, it is out of the power [ * 248 ] of the assured to calculate with any certainty * upon the extent of his funds; his commercial enterprise will be checked, and his plans embarrassed and defeated.
For these reasons, we are all of opinion, that the interest of commerce, as well as that of the contracting parties in a policy, require that some period should be established, at which the right or- the insured to his indemnity, and of the assurer to the property, should be fixed; and we think we are clearly warranted by sound principles to fix the time of abandonment as that period.
*217 No case, to our knowledge, has occurred in England, precisely establishing this point, though the principles adopted there must lead to this conclusion, whenever a case happens, which will require a specific adjudication upon this subject. Indeed, the principle seems to be fully admitted in the case of Kemp & Al. vs. Vigne (12), where Lord Mansfield himself says, that a temporary capture is such a total loss, as that an insured upon interest is warranted in abandoning at the time, if he please. Now, no case has been cited which shows that after an abandonment rightfully made, the assurer can resist the payment of a total loss.
Emerigon, before cited, shows, that the abandonment, under such circumstances, is the proper test of the assured’s claim. His words are, “ If, upon a total loss happening, the ship be abandoned, but afterwards arrive safe, or otherwise recover her liberty, the insurer shall, nevertheless, satisfy the insured as for a total loss; but then they, that is, the insurers, are entitled to all benefits of the voyage.”
This is all which is contended for by the plaintiff in the present action ; and he seems to have made good his claim.
A case was lately decided in the Supreme Court in the state ol Pennsylvania, which presented the, same objections, besides others more forcible, against a recovery for a total loss, as we find in the case before us; but they did not prevail; and the principle we have now decided, was unanimously assented to by the judges of that court.
We see no difficulty in the application of this principle in relation to the ship, or to the freight: the abandonment applied * to both, and the case does not show any act of [ * 249 ] the assured, amounting to a waiver of his rights, as to either of the subjects of the policy. Judgment must, therefore, be for a total loss both of vessel and freight (13).

 Marshal, 483.

 [M' Bride vs. Mar. Ins. Co. 5 Johns. 299.—Ed

 Marshal 423, 432.

 Emerigon, Tom. 1. 537

 Pothier.

 [Jumel vs. Mar. Ins. Co. 7 Johns. 412.—Ed.]

 1 Term R. 304.

 [See Brown vs. Smith, 1 Dow, 349.—Smith vs. Roberts, 2 Dow, 474.—Sed vide Hughes Ins. 408, 413.—Low vs. Goddard, 12 Mass. 112.—Smith, M. L 241.—If a ship Its captured, or detained under an embargo, and before action brought she escape, -.or bo recaptured, or rescued, or the embargo be removed, the loss, which once was primA facie total, becomes partial.—Bainbridge vs. Nelson, 10 East. 329.—1 Camp. 237, 564.— Patterson vs. Ritchie, 4 M. & S. 393.—Brotherton vs. Barber, 5 M. & S. 418.— 2 Wm. Saund. 203, b. n. 19.—Macarthy vs. Abel, 5 East. 388.—Everth vs. Smith, 2 M. &. S. 278.—Naylor, vs. Taylor, 9 B. & Cr. 718.—4 M. & R. 526.—M'Ivers vs. Henderson, 4 M. & S. 576.—Parsons vs. Scott, 2 Taunt. 363.—Cologan vs. Lond. Ins Co., 5 M. & S. 447.—M' Masters vs. Schoolbred, 1 Esp. 237.—Oliver & Al vs Newburyport Ins. Co., ante, 37.—Ed.]