Parker, C. J.
[After stating the action, the policy, and the facts agreed.] On these facts the question is now submitted to the Court, whether any, and, if any, what loss is proved ; and the verdict, which was taken by consent of parties, is to be set aside or amended, according to the direction of the Court.
The seizure of the vessel in St. Jean de Luz, not being alleged to have been for a breach of the revenue or other municipal laws of. France, must be viewed as a hostile capture ; so that, if this policy had insured the plaintiffs against capture, there is no doubt the underwriters would have been liable for a total loss. In the case of Lee vs. Boardman (1) it was decided, that an arrest by a foreign power, although not in a state of war with the country of the insured, is a capture ; and the authorities, cited in that case, are sufficient to justify that decision.
Notwithstanding the disasters which happened to the vessel before she arrived at the French port, yet, as she went into that port entire, and carried her cargo, except what had been thrown overboard in the tempests, she would be considered as having been lost by capture, and not by the perils of the sea ; unless the testimony of the master, that she was injured by sea peril to the amount of three fourths of her value, is to take her out of the rule established [*234] * by Lord Kenyon, in the case of Green vs. Elmslie, (2) and since recognized by Lord Ellenborough, in the case of Livie vs. Janson; (3) which rule, although not binding upon us, must be considered as founded on correct principles, and as a necessary branch of the law of insurance.
The maxim, Causa próxima, non remota, spectatur, is of importance to be observed in these contracts. For it will be difficult, if not impossible, in the case of successive misfortunes happening to a ship, from divers causes, to make a just apportionment of the injury to the peril ; and, as a general rule, which, when understood, will produce equality in its application, to attribute the loss to the last *207 peril which affects the vessel, she having survived antecedent ones, is as safe and convenient as any which can be suggested.†
The only answer given to this defence is, that, in the cases decided upon that principle, a partial loss only was claimed ; and it seems to be admitted, that, when the subject-matter is wholly lost by a subsequent peril, the antecedent partial loss is merged and gone, so that no action can be founded upon it, no repairs having been actually made, and no expenses incurred.
But it is said, that in this case there was a total loss of the ship, by the perils of the sea, before she was captured, because she was injured to three fourths of her value, and was not worth repairing.
We have been struck with this distinction, and have not abandoned it without much hesitation, because technical rules only seem to prevent the plaintiffs from recovering an indemnity for the multiplied disasters of their voyage. But, on full consideration, we are of opinion that the plaintiffs cannot prevail on this ground.
It is true, if the ship had arrived in a friendly country in the state she is described by the master to have been in, the assured might, after abandonment, have recovered as for a total loss. But the loss was only constructively total, and an abandonment was necessary to give a right of action against the underwriters. The ship, although damaged, was * entire as a ship, when taken [ * 235] possession of by the French officers. If she had not been damaged, and had arrived at the same place, the same catastrophe would have happened. It is true, the tempest obliged her to go inti? that port ; but the going in was not the loss. It was the capture and the underwriters against capture, if there be any, must make up the loss, without any diminution on account of the previous damage sustained by the vessel.
Further, there can be no total loss here on account of sea peril , for, notwithstanding that peril, the ship was left ; and there ought to be an effectual abandonment to entitle the assured to recover. But in this case there could be no such abandonment, because, by a subsequent loss, at the risk of the assured or of other underwriters, the assured was disabled from abandoning, on account of the partial loss, so as to pass the property of the ship to the insurer. And in no case can a loss, in its nature partial, be converted into a total loss, where the subject-matter, either by the act of the assured, or by the act of others while at his risk, is not under his control, so that he may transfer a title by abandonment.
A partial loss upon the vessel cannot be recovered, for the reasons before given, namely, that the subsequent total loss merged the partial *208 loss, and rendered it altogether immaterial in its effects, no expense having been actually incurred for repairing the damage, before the total loss took place.
The same reasoning is applicable to the cargo which arrived in the vessel at St. Jean de Luz, and was there sequestrated. It must be considered as captured ; and although a part of it was damaged by sea peril, yet the whole must be considered as the loss of the underwriters against capture, or of the insured, who, if they made no insurance against that risk, were their own underwriters.
With respect, however, to that part of the cargo which was thrown overboard in the tempest, long before the capture [ * 236 ] took place, we think a different principle applies. A * distinct and separate portion of the cargo was thus utterly lost by sea peril. Whether the ship had been afterwards captured or not, this loss would have remained absolute and irreparable. It was not a mere deterioration of the cargo, leaving the subject-matter whole and entire, although impaired in value, like the damage to the ship. For this part, so lost, we think the assured may recover as for a partial loss upon the cargo. The underwriters against capture upon the cargo, if called upon to make good the loss, would have a right to prove, that, when the capture took place, a third part of the cargo had been actually lost before by another peril, and that two thirds only were on board the vessel when she was captured.
Suppose two policies bad actually been effected upon a cargo, one against sea perils, and the other against capture ; and it should be made manifest, that one half of the cargo was actually lost, by stress of weather, in a few days after the vessel sailed ; and afterwards, towards the termination of the voyage, she was captured. Would it not be perfectly equitable and legal, that each policy should indemnify, the assured for what was lost by the risk it insured against ? So, if the whole cargo was lost before capture, the underwriter against sea perils should pay for the whole, because, in such a case, nothing would be captured.
We have not been able to find any decided case similar to the one before us. But we think the principles of law, applicable to this contract, justify the rule we have adopted. The only reason why a loss upon the ship cannot be recovered, there being a subse quent total loss, is, that the damage to the ship is reparable, and the capture renders it not only vain and fruitless, but utterly impossible, for the assured to repair her; so that no loss can fairly be said to have taken place, which vests a right of action, until the property was divested from the assured by another peril.
But with respect to the actual destruction of a portion of the cargo before the capture, by sea peril, we think that the un.derwriters upon this policy are clearly answerable. Assessors *209 * must, therefore, be appointed, according to the agree- [*237] ment of the parties, who will ascertain the amount for which the defendant is holden. There being no salvage, there can be no contribution ; so that the value of the cargo lost will show the amount to be recovered.†

 3 Mass. Rep. 238.

 Peake's N. P. 212.

 12 East, 647,

 Walker vs. Maitland, 5 B. & A. 171. — Bishop vs. Pentland, 7 B. &. C. 223. — Burk vs. Royal Exch. Ins. Co., 2 B. A. 73. — Holdworth vs Wise, 7 B. & Cr. 794, 1 M. & B 653. — Lam vs Goddard, ante, 112.

 Patrick vs. Com. Ins. Co., 11 Johns. 9-14. — Schieffelin vs. New York Ins. Co., 9 Johns. 21. — Coit vs. Smith, 3 Johns. Cases, 16. — Williams vs. Smith, 2 Caines, 20.