## John McGuire *vs.* John C. Grant.

1. Where the owner of a lot builds upon his boundary line, and the building is thrown down by reason of excavations made upon the adjoining lot, in the absence of improper motive and of carelessness in the execution of the work, no recovery can be had for the injury done to the *building*.

2. There is incident to land, *in its natural condition*, a right to support from the adjoining land ; and if land, not subject to artifical pressure, sinks or falls away in consequence of the removal of such support, the owner is entitled to damages to the extent of the injury sustained.

3. The measure of damages in such case, is not the cost of restoring the lot

McGuire v. Grant.

to its former situation, or of building a wall to support it, but it is the *diminution in value* of the plaintiff's lot, by reason of the acts of the defendant.

4. Where the act complained of was not done by the defendant himself, the relation of master and servant must subsist between him and those by whose instrumentality the work was done, in order to render the defendant liable.

5. The responsibility of a master for the tortious acts of his servant, grows out of, is measured by, and begins and ends with his control over them.

6. If a committeeman of a municipal corporation orders a lawful act to be done, and the work is done, so as to occasion an actionable injury, by workmen under the immediate superintendence and direction of another officer of the corporation, not appointed or controlled by the committeeman, such committeeman is not liable for the injury resulting from the doing of the work.

This cause was argued upon the following case, certified from the Mercer Circuit for the advisory opinion of this court.

The action is brought to recover damages done to a lot of the plaintiff by reason of excavations made upon an adjoining lot, (*prout* declaration). The plea is the general issue.

The plaintiff is the owner in fee of a lot of land in the city of Trenton, fronting on Broad street, and extending in the rear to Cooper street. The grade of Cooper street is sixteen feet below the natural surface of the earth in the rear of the plaintiff's lot. The excavation which occasioned the injury was made upon a lot of H. McCall, fronting on Cooper street, and immediately adjoining the lot of the plaintiff. The McCall lot had been cut down to the grade of Cooper street, and the place where the excavation was made was two or three feet below the level of Cooper street, and nearly twenty feet below the surface of the plaintiff's lot.

The work which occasioned the injury (at least in part) was done by Irish laborers, employed by and under the immediate direction of Samuel B. Scattergood, the street commissioner of the city of Trenton. The defendant was chairman of the street committee of the city of Trenton. The committee consists of three persons. All the work

upon the streets is done under their direction. It is part of their business to procure gravel for the streets. The McCall lot was used as a gravel pit. The defendant had purchased gravel of McCall for the use of the city, and had ordered the street commissioner to go upon the Mc-Call lot to procure gravel, whenever it was wanted. The excavation was made under this order. The street commissioner commenced digging gravel on the lot in the summer of 1854, and continued to dig from time to time until late in the fall. When the men were set to work, the excavation was from fifteen to twenty feet from the nearest point of the plaintiff's lot where it caved in. The city workmen were in the habit of going to the pit for gravel, from time to time, as it was wanted; neither the defendant nor Scattergood being present to superintend the labor. Other persons were, also, in the habit of taking gravel from the pit, and took more than was taken by the city, but it did not appear that they dug gravel so near the plaintiff's lot as to occasion any part of the injury. Late in the fall the pit had extended so near to the plaintiff's line as to occasion the falling in of a part of his lot. It fell while the workmen under Scattergood were getting gravel in the pit.

The plaintiff's lot has fallen in eighty-four feet in length, and from two to eight feet in width, and still continues to fall. There is no mode of supporting the earth, except by a perpendicular or slope wall, or by sodding. It will require a wall eighty-four feet long, twenty-two feet high, and two feet thick, to support the bank. The wall would cost $333. Including the filling in, the entire cost would be $450.

The plaintiff, having been nonsuited, a rule is granted to show cause why the nonsuit should not be set aside. And to the end that it may be decided whether the non suit was properly granted, and to what redress, if any, the plaintiff is entitled, it is directed that the case be certified

to the Supreme Court, for its opinion upon the following points, *viz*:

1. Upon the facts stated, can an action be maintained by the plaintiff for the injury done to his land ?

2. Is the defendant liable for the injury ?

3. If yea, can he avail himself of the legal defence offered under the general issue ?

4. If the defendant be liable, what is the measure of damages ?

The case was argued, at November term, 1855, before the Chief Justice, and Elmer and Vredenburgh, Justices.

*Halsted*, for the plaintiff.

Upon the facts stated in the case, the plaintiff is entitled to recover for the injury sustained by him. *Thurston* v. *Hancock*, 12 *Mass*. 220 ; 1 *Arch. N. P*. 403 ; 1 *Ad. & El.* 493 ; 3 *Barn. & Ad*. 871 ; 17 *Johns. R*. 92.

The defendant is liable for the injury. 4 *Durn. & E.* 794 ; 9 *Barb*. 365 ; 5 *Barn. & Ad*. 837 ; 2 *Barn. & Cres.* 703.

The defence must be pleaded specially. *Arch. N. P*. 407.

As to the measure of damages. *Sedgwick on Dam*. 463, *note ;* 5 *Watts* 375 ; 1 *Exch. Rep*. 131.

*Beasley*, for the defendant.

The doctrine, that a recovery may be had for the injury of which the plaintiff complains, seems to be settled in England, rather by the *dicta* of the judges than by judicial decisions. It is treated as a settled rule. So is the doctrine in regard to ancient lights. But neither doctrine has been adopted in this country. The latter has been rejected by the American courts. 19 *Wend*. 312 ; 9 *Alabama* 63 ; 26 *Maine* 436 ; 10 *Barb*. 537 ; 4 *Halst. Ch*. 559 ; and see 12 *Ad. & E*. 749 ; 1 *Ad. & E*. 493.

It is admitted that, if the injury result from the negligence or improper conduct of the defendant, the plaintiff

may recover. But where the defendant is using his land in the ordinary way, making excavations with proper care for building purposes, the plaintiff has no cause of action.

The defendant is not liable. As a superior, he gave a general order to a subordinate officer. The legal presumption is, that he ordered the work to be done with proper care. Unless an illegal act is commanded to be done, or the party sought to be charged, himself co-operated in doing the act which occasioned the injury, he is not liable. The relation of master and servant must subsist. This is an attempt to make one *employe* answerable for another. 1 *Parsons on Con.* 86, 89, *notes.*

The city is responsible as principal. There cannot be two principals, unless jointly responsible. 5 *Barn. & Cr.* 559. One servant cannot be responsible for his fellow. 15 *East* 383 ; 12 *Mod.* 472.

Again. The defendant was a public officer, acting in an official character without compensation, and through a subordinate, he cannot be held accountable. 2 *Bing.* 156 ; 6 *Taunt.* 29.

It was not his duty to control or direct the laborers. They were not in his employ. They were under the superintendence of the street commissioner, and independent officer, not chosen or controlled by the defendant.

The evidence is competent under the pleadings. In actions on the case, every defence is available under the general issue. It is not a justification. 1 *Chit. Pl.* (*7th ed.*) 527.

The entire injury was not occasioned by those employed for the city. The defendant cannot be held responsible for all the damage sustained by the plaintiff.

The CHIEF JUSTICE. The first question submitted for consideration is, whether, upon the facts stated in the case certified, an action can be maintained by the plain-

tiff for the injury done to his land. The injury complained of consists in the settling and falling away of the plaintiff's land, in consequence of excavations made upon an adjoining lot. If the acts complained of were done with a malicious intent, or if the injury sustained by the plaintiff resulted from the careless and improper manner in which the work was executed, it is not denied that the plaintiff would be entitled to recover. The existence of improper motive, or of negligence or unskillfulness in the performance of the work, are questions of fact for a jury. *Walters* v. *Pfeil,* 1 *Mood. & Mal.* 362; *Dodd* v. *Holme,* 1 *Ad. & E.* 493; *Panton* v. *Holland,* 17 *J. R.* 92.

The case presents the simple inquiry, whether, in the absence of improper motive or negligence on the part of the defendant, the owner of land is entitled to recover for injuries sustained by the settling or falling away of his land, occasioned by excavations made on an adjoining lot. From the facts stated in the case, it must be assumed that the excavation was not made to an extraordinary or unusual depth; for although the excavation was made for the purpose of obtaining gravel, and was twenty feet below the surface of the plaintiff's lot, it was but two or three feet below the grade of Cooper street, upon which the lot in which the excavation was made fronted. It was not, therefore, a greater excavation than would be required for the ordinary purposes of building.

It is insisted, on the part of the defendant, that the maxim, " *sic utere tuo ut alienum non lædas* " applies, in its broadest signification, to the question under consideration; that while the owner of the land owns not only the surface of the soil, but above and below it to an indefinite extent, he is bound so to use and enjoy his own property as to occasion no injury to the property of others; and that, consequently, while excavating upon his own soil, he is answerable for every injury done to the buildings or land of an adjoining proprietor. The principle, it is cer-

tain, does not admit of so broad an application. There are many acts done in the exercise of individual rights which occasion loss to others, which nevertheless afford no subject of legal redress. The loss they occasion is, in the eye of the law, *damnum absque injuria*. The line which separates this class of acts from those which form the subjects of legal redress is often shadowy and indistinct. It rests frequently upon grounds of public policy, or upon the mere force of authority, rather than upon any clear or well defined principle.

It is well settled, that where the owner of a lot builds upon his boundary line, and the building is thrown down by reason of excavations made upon the adjoining lot, (in the absence of improper motive and carelessness in the execution of the work) no recovery can be had for the injury done to the building. There are two early cases in which, under similar circumstances, a recovery was had, though it does not appear that in either of them the point now under consideration was distinctly raised. In one of them, the exceptions taken were confined to the form of the declaration. *Slingsley* v. *Barnard*, 1 *Rolle's Rep.* 430; *Smith* v. *Martin*, 2 *Saund.* 394.

But the cases denying the right of recovery under such circumstances are so numerous, and the modern cases so uniform, that the question must be considered as finally at rest, so far as authority can settle it. 2 *Rolle's Abr.* 565, *Trespass I, pl.* 1; *Com. Dig.* "*Action on the case for nuisance,*" *C; Massey* v. *Goyner* 4 *Carr. & P.* 161; *Wyatt* v. *Harrison*, 3 *Barn & Ad.* 871; *Partridge* v. *Scott*, 3 *Mees. & W.* 220; *Humphries* v. *Brogden*, 12 *Q. B.* 739; *Gayford* v. *Nicholls*, 9 *Exch. R.* 702; *Thurston* v. *Hancock*, 12 *Mass.* 220; *Panton* v. *Holland*, 17 *J. R.* 92; *Lasala* v. *Holbrook*, 4 *Paige* 169; *Hay* v. *The Cohoes Co.*, 2 *Comst.* 159. The principle upon which the decisions rest has been so elaborately discussed, and so repeatedly and thoroughly investigated, that a reinvestigation would be profitless labor. It is only necessary to

say, that we regard the question as settled in accordance with principle and sound policy.

Whether the same principle applies to injuries done to the soil in its natural condition, with no buildings erected upon it, is a question of more difficult solution, and which, until recently, has not been the subject of express adjudication. It has, however, frequently been discussed, and the principle upon which it rests investigated. The distinction between a claim for an injury to the soil, and to buildings erected upon it, appears to have been first noted by Sergeant Rolle, in his note to the case of *Wilde* v. *Minsterly*, already cited. The report is as follows : " If A, seized in fee of copyhold land closely adjoining the land of B, and A erect a new house upon his land, and any part of his house is erected on the confines of his land adjoining the land of B, if B afterwards dig his land so near to the foundation of the house of A, but not in the land of A, that by it the foundation of the messuage and the messuage itself fall into the pit, still no action lies by A against B, inasmuch as it was the fault of A, himself, that he built his house so near the land of B ; for he cannot by his own act prevent B from making the best use of his and that he can." " But it seems," the reporter adds, " that a man who has land closely adjoining my land cannot dig his land so near mine that mine would fall into his pit, and an action brought for such an act would lie." 2 *Rolle's Ab.* 564, *Trespass.* This *dictum* is cited as authority by Baron Comyns. *Com. Dig.* "*Action on the case for nuisance*" A.

It certainly seems paradoxical, at first view, that a man may recover for an injury done to his land by an excavation in the land of his neighbor, but not for an injury by the same act to the buildings erected upon the land. But it will appear, upon consideration, that the distinction is founded in reason and sound principle. The distinction and the grounds of it are thus stated by *Gale & Whatley*,

*Law of Easements*, 215, 218. The right to support from the adjoining soil, may be claimed either in respect of the land in its natural state, or land subjected to an artificial pressure by means of buildings or otherwise. If every proprietor of land was at liberty to dig and mine at pleasure on his own soil, without considering what effect such excavations must produce upon the land of his neighbor, it is obvious that the withdrawal of the lateral support would in many cases cause the falling in of the land adjoining. As far as the mere support of the soil is concerned, such support must have been afforded as long as the land itself has been in existence. And it would seem, in all those cases at least in which the owner of the land has not, by buildings or otherwise, increased the lateral pressure upon the adjoining soil, that he has acquired, by such ancient enjoyment, a right to the support of it, rather as a right of property than as an easement, as being necessarily and naturally attached to the soil. The negation of this principle would be incompatible with the very security for property, as it is obvious that if the neighboring owners might excavate their soil on every side up to the boundary line to an indefinite depth, land thus deprived of support on all sides could not stand by its own coherence alone. * * * * Where, however, anything has been done to increase the lateral pressure, as where buildings have been erected, it appears to be clearly settled, that no man has a right to such increase support, unless the building, or other thing which makes it necessary, is of ancient erection.

In *Wyatt* v. *Harrison*, 3 *Barn. & Ad.* 871, Lord Tenterden, in delivering the judgment of the Court of Kings Bench, said: " It may be true, that if my land adjoins that of another, and I have not, by building, increased the weight upon my soil, and my neighbor digs in his land so as to occasion mine to fall in, he may be liable to an action. But if I have laid an additional weight upon my land, it

does not follow that he is to be deprived of the right of digging his own ground because mine will then become incapable of supporting the artificial weight which I have laid upon it; and this is consistent with 2 *Rolle's Abr.*, " *Trespass I,*" *pl.* 1.

This right to lateral support from adjoining soil (said Lord Campbell, in delivering the judgment of the Court of Queens Bench,) is not like the support of one building upon another, supposed to be gained by grant, but it is a right of property passing with the soil. If the owner of two adjoining closes conveys away one of them, the alience, without any grant for that purpose, is entitled to the lateral support of the other close, the very instant when the conveyance is executed, as much as after the expiration of twenty years, or any longer period. *Humphries*. v. *Brogden*, 12 *Queens B.* 743.

In *Thurston* v. *Hancok* (12 *Mass.* 229), Ch. Just. Parker, in delivering the judgment of the Supreme Court of Massachusetts, said : A man, in digging upon his own land, is to have regard to the position of his neighbor's land, and the probable consequences to his neighbor, if he digs too near his line ; and if he disturbs the natural state of the soil, he shall answer in damages ; but he is answerable only for the natural and necessary consequences of his act, and not for the value of a house put upon, or near the line by his neighbor.

In *Hay* v. *The Cohoes Company* (2 *Comst.* 162), Gardiner, J., in delivering the judgment of the Court of Appeals of the state of New York, after citing the *dictum* of Rolle, that " a man cannot dig his land so near min e as to cause mine to slide into the pit," said : " In the last case, the injury would consist in depriving the owner of a part of the soil to which his right was absolute. No degree of care in the excavation by the pit owner would, I apprehend, justify the transfer of a portion of another man's land to his own."

*In Lasala* v. *Holbrook*, 4 *Paige* 172, Chancellor Walworth says : I have a natural right to the use of my land in the situation in which it was placed by nature, surrounded and protected by the soil of the adjacent lots, and the owners of these lots will not be permitted to destroy my land by removing this natural support or barrier. Thus, it is laid down by Rolle, that I may sustain an action against a man who digs a pit on his own land so near to my lot that my land falls into the pit. But my neighbor has the right to dig the pit upon his own land, if necessary to its convenient or beneficial use, when it can be done without injury to my land in its natural state. I cannot, therefore, deprive him of this right by erecting a building on my lot, the weight of which will cause my land to fall into the pit, which he may dig in the proper and legitimate exercise of his previous right to improve his lot.

In neither of the foregoing cases, in which the *dictum* of Rolle was cited and approved, was the question now under consideration the precise point adjudicated.

But in *Richardson* v. *The Vermont Central Railroad Co.*, 25 *Verm. R.* 465, the plaintiff claimed damages upon the ground, among others, that the defendants had made an excavation for their railroad so near to the line of the plaintiff's land, that a part of his soil had fallen away. The court adopted the distinction taken by Rolle, and held that the plaintiff was entitled to recover. They say the injury is in depriving the owner of a portion of his soil, to which his right is absolute.

In *Farrand* v. *Marshall*, 19 *Barb. S. C. Rep.* 380, an injunction had been granted in equity, to restrain the defendant from removing the earth adjacent to the plaintiff's land, for the purpose of making brick, and thus withdrawing the natural support of the plaintiff's soil, and permitting it to sink down and slide away. A motion to dissolve the injunction was denied by Harris, J. In de

livering the opinion, he said, "the right to lateral support must be regarded as an incident to the land. It is a right of property necessarily and naturally attached to the soil." In this case it appeared that the plaintiff's land was a city lot upon high ground, and that the defendant was making his excavation to the depth of fifty feet, for purposes to which such lands are not usually applied.

The only judicial opinion which I have met with in conflict with this weight of authority will be found in *Radcliff's ex'rs* v. *The Mayor of Brooklyn*, 4 *Comst. R.* 202. Mr. Justice Bronson, in delivering the opinion of the Court of Appeals of New York in that case, assailed the doctrine with his accustomed vigor and force of argument, and denied that it was law. It seems, however, from a statement in 19 *Barb.* 384, that this part of the opinion was not the opinion of the court, and it certainly was not the point at issue in the cause, nor necessarily involved in the decision.

In a note of the accurate and critical American editors to *Brown* v. *Windsor*, 1 *Cromp. & Jer.* 29, it is said : "This cautious suggestion" (of Rolle, 2 *Rolle's Abr.* 564,) is magnified by Lord Campbell, C. J., in *Humphries* v. *Brogden*, 12 *Q. B.* 739, into an authority for the principle, that though there is not a right of lateral support for buildings, there is a right of lateral support to soil from the adjoining soil, which is a right of property passing with the soil. In that laborious opinion, Lord Campbell appears quite to misunderstand the meaning of Rolle, and to import into the English law a doctrine which has no rightful existence there. The true principle to be gathered from the passage in Rolle is, that the owner of soil owes no support to either the soil or the buildings of his neighbor; but that in excavating his own soil he has no right to rob his neighbor of soil that belongs to him ; and therefore, if he brings down his neighbor's soil into the cavity which he has made in his own, he is responsible to him

for the value of the soil which he has thus abstracted." There may be consequences resulting from the doctrine, that the right to lateral support from the adjoining land is a right of property, which will require it to be adopted with some qualifications. But in the absence of any such right, it is difficult to perceive how the party removing the adjacent soil can possibly be regarded as a wrongdoer, or be held liable in damages for the consequences of the act. If the soil removed belongs to the defendant, and the plaintiff has has no right to require that it should remain undisturbed, as far as may be necessary to support his soil, upon what principle is it that the defendant can be held accountable for the fall of the plaintiff's soil?

The decided weight of authority and sound principle concur in support of the position, that there is incident to land, in its natural condition, a right to support from the adjoining land; and that if the land sinks or falls away in consequence of the removal of such support, the owner is entitled to damages to the extent of the injury sustained.

The measure of damages in such case is not what it will cost to restore the lot to its former situation, or to build a wall to support it, but what is the lot diminished in value by reason of the acts of the defendant. It will frequently happen that the subsidence of land in a city, occasioned by the grading of adjoining lots, thus bringing the surface nearer to the grade of the street, will but slightly diminish its real value. The only true criterion of damages, therefore, is the diminution in the value of the lot. How far the injury resulted from the acts of the defendant, and how far it was occasioned by others, is a question of fact for a jury.

In examining the plaintiff's right to damages for the injury done to his land, we have assumed that the wrongful acts were done by the defendant, or by his direction. It remains to inquire whether the defendant is legally responsible for the acts which occasioned the injury. It is a

conceded principle, that if the injurious acts were done by the defendant, or by his direction, or by persons in his employ, he is personally responsible.

The acts were not done by the defendant himself, nor by persons acting under his immediate direction or for his personal benefit. The work was done for the city of Trenton. It was done under the immediate direction and superintendence of the street commissioner, an officer appointed by the common council. It was done by laborers employed, directed, and controlled, so far as appears, exclusively by the street commissioner, and who were neither employed, paid, or controlled by the defendant. The defendant was chairman of the street committee, under whose direction the work upon the streets was done, and whose business it was to procure gravel for the streets. In performance of this duty, the defendant purchased gravel of McCall, for the use of the city, and directed the commissioner to go upon McCall's lot to procure it, whenever wanted for the use of the city. This general direction was given several months before the injury was sustained by the plaintiff, and at a time when, so far as appears, and as may be presumed, the gravel could have been procured without prejudice to the plaintiff's rights. It cannot be assumed that, in giving a direction in itself perfectly lawful, the defendant authorized or directed the work to be done in an unlawful manner or to an unlawful extent. The defendant neither commanded an illegal act to be done, nor co-operated in doing the act which occasioned the injury. The relation of master and servant must subsist between the defendant and those by whose instrumentality the work was done, in order to render the defendant liable. But the laborers were not his instruments. As has been said, they were neither selected, employed, paid, nor controlled by him. They were neither his servants in fact nor in law. He cannot, therefore, be

liable for their acts. 1 *Parsons on Con.* 86, 90 ; *Laugher* v. *Pointer,* 5 *Barn. & C.* 547.

The defence is competent under the general issue. It consists not in a special justification of the acts complained of, but in a denial of the defendant's liability.

The Circuit Court should be advised accordingly.

ELMER, J. The first question to be determined in this case is, whether the plaintiff has a right of action, upon the facts stated, against any one, for the injury complained of. As to this, I think there can be no doubt that the owner of the soil has a right to the natural support of the soil of the adjacent close, so that if that close is so dug upon as to remove that support, the person who does this is responsible for the damage. *Wyatt* v. *Harrison,* 3 *Bar. & Ad.* 871 ; *Harris* v. *Ryding,* 5 *M. & W.* 60 ; *Peyton* v. *The Mayor of London,* 9 *B. & C.* 725 ; *Dodd* v. *Holme,* 1 *Ad. & E.* 493 ; *Jeffries* v. *Williams,* 1 *Eng. L. & E. R.* 434 ; *Thurston* v. *Hancock,* 12 *Mass.* 220 ; *Panton* v. *Holland,* 17 *Johns.* 92 ; *Runnel* v. *Bullen,* 2 *New Hamp.* 534 ; *Shrieve* v. *Stokes,* 8 *B. Monroe* 453.

The case turns upon the second question submitted to us; namely, is the defendant liable for the injury complained of. He was the chairman of the street committee of the common council of the city of Trenton, and the case states that all the work upon the streets is done under their direction. It is a part of their business to procure gravel for the streets, and the defendant purchased of McCall, for the use of the city, gravel to be dug out of his gravel pit adjoining the plaintiff's land, and he ordered the street commissioner to go upon the McCall lot to procure gravel, whenever it was wanted. The excavation which occasioned the plaintiff's land to fall in was done under this order, by laborers employed by and under the immediate direction of Scattergood, the street commissioner. It not being stated that it was necessary, in order

to procure the gravel required, to go so near the plaintiff's line as to injure him, or that the defendant was present ' hen the excavation was made, or that he has in any way participated in, or sanctioned, the wrongful acts of the workmen, if he is liable for what they did, it must be on the principle, that the workmen were, at the time, acting as his servants, so that he was bound to direct them aright.

A master is responsible for the tortious acts of his servant which were done in his service. This responsibility grows out of, is measured by, begins and ends with his control over them. If it is his duty to control them in what they do, he is responsible for his neglect. But where workmen do not stand in such relation to the person sought to be charged, as to make it his duty to control them, they are not his servants, and he is in nowise responsible for their acts, except in some cases where, by subsequently adopting and sanctioning those acts, he renders himself legally a participator in them. Hence it has been held, by a series of decisions in England, overruling some of earlier date, that an owner, or principal contractor, or master workman, is not responsible for damage occasioned by the wrongful acts of persons employed by a subcontractor or under workman, or by a person carrying on a distinct independent employment, because they were not his servants, and did not act for him, but for their immediate employer. *Laugher* v. *Pointer*, 5 *B. & C.* 547; *Rapson* v. *Cubitt*, 9 *M. & W.* 710; *Milligan* v. *Wedge*, 12 *Ad. & E.* 737; *Allen* v. *Hayward*, 7 *Q.B.* 959; *Peach* v. *Rowland*, 16 *En. L. & E. R.* 442. There are American cases, of an earlier date, which follow the earlier English cases, and carry the liability of the owner or principal contractor somewhat further. *Lowell* v. *Bost. and Low. Railroad Co.*, 23 *Pick.* 24; *The Mayor of New York* v. *Baily*, 2 *Denio* 433. But none of them are like this case. The street commissioner was not appointed by, or responsible to the committee, but to the common council, who appointed them both. Their duties

were plainly distinct.   The statement in the case, that all the work done in the streets is done under the direction of the committee, can mean no more than that it is their province to decide what streets need repair, to direct the general mode of doing it, to provide suitable materials, and to devolve on the commissioner the oversight of the details, which properly belong to him.   The commissioner was not selected by the committee as the suitable person to do this on their behalf, but he did it as a distinct independent officer of the municipal corporation.   He was in no sense the agent or the servant of the committee, and they were, therefore, neither responsible for what he or his workmen did, nor for what he or they neglected to do. The defendant did nothing but purchase a right to dig gravel in a proper manner, and to order it to be so dug. Whatever may be the liability of the street commissioner, or of the city itself, as to which no opinion is meant to be intimated, he had nothing to do with the subsequent proceedings.

It would be, in my opinion, exceedingly detrimental to the public service to hold an individual, situate as the defendant was, personally responsible for the tortious acts of workmen employed by an officer charged with that special duty, and I should be sorry to find the law to be so. Every member of the common council of the city might be just as well involved in a similar liability.   The committee, for the sake of convenience, was for the time substituted in their place, and acted on their behalf.   Who would fill such a station, if such consequences are to follow?   Certainly no one who had any responsibility to put in danger.

In the case of *Nicholson* v. *Mounsey*, 15 *East* 384, the captain of a sloop of war was sued for damages, alleged to be done by carelessly running down another vessel, at a time when he was not on deck, and when it was not his duty to be there, but that of the first lieutenant, who

actually had charge of the sloop. The court held that the captain did not stand in the situation of an ordinary master of a vessel, not having the appointment of the officers and crew, and not responsible for their acts. So it may be said here, the defendant did not appoint the street commissioner, nor had he any right to employ, or to interfere with, the workmen engaged by him. Both the defendant and the commissioner were the common servants of the city, having each their several duties, and neither was the servant nor in the employment of the other. The case of *Duncan* v. *Finlater*, 6 *Clark & Fin.* 894, is more like the present than any other I have met with. There it was held, by the house of lords, that the trustees under a public road act were not responsible for an injury occasioned by the negligence of the men employed by their surveyor in making or repairing the road in accordance with their general directions, the men not being in the situation of servants to the trustees.

Reference was made by counsel, on both sides, to a class of cases where public officers were not held responsible for the consequences of their own acts or of the acts of their workmen or servants, not done arbitrarily, carelessly, or oppressively, but in the performance of their duty. *The Governor, &c.,* v. *Meredith,* 4 *T. R.* 794; *Sutton* v. *Clarke,* 6 *Taunt.* 29 ; *Hall* v. *Smith,* 2 *Bing.* 156 ; *Boulton* v. *Crowther,* 2 *B. & C.* 703. But these cases are not applicable. They were cases where the officers had the specific duty or the special authority to do the very act complained of, and where they did it, in fact, either themselves or by workmen by them employed. In this case it was not required of the committee or of the commissioner to get gravel in a particular place, nor was the doing so indispensible to the performance of their particular duties. If the defendant had done the illegal acts complained of, he would have been accountable for the consequences. But as they were done neither by him nor by workmen in his employ and under his control, but by persons who were

strangers to him, he is not responsible for them, and the plaintiff was rightly nonsuited.

VREDENBURGH, J., concurred.

Order, that the Circuit Court be advised accordingly.

CITED *in Cuff, adm.,* v. *Newark & N. Y. R. R. Co.,* 6 *Vr.* 22; 24.