12 N.J. Super. 265 (1951)
79 A.2d 502
RUTH I. GERHARD, PLAINTIFF,
v.
HARRY C. FICHTER AND WILLIAM W. ADAMS, INC., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided March 15, 1951.
*266 Mr. Milton T. Lasher, attorney for plaintiff.
Messrs. Smith, James & Mathias, attorneys for defendant Harry C. Fichter.
Mr. Abram A. Lebson, attorney for defendant William W. Adams, Inc.
GRIMSHAW, J.S.C.
Plaintiff is the owner of lot 12B in Block 181 on the assessment map of the Borough of Tenafly. Defendant Fichter is the owner of lot 11 in the same block. Defendant's lot adjoins that of plaintiff on the west. Both lots were owned by the General Electric Realty Corporation. On lot 12B, on September 20, 1932, there was and still is a frame dwelling. Lot 11 was vacant land. The land sloped sharply from lot 12B across lot 11 in a westerly direction.
On September 20, 1932, General Electric Realty Corporation conveyed lot 12B to the plaintiff. And on September 3, 1940, the General Electric Realty Corporation conveyed the vacant lot 11 to one Benjamin. Fichter acquired title to lot 11 on October 18, 1949. At that time the lot was still vacant. Fichter immediately proceeded to level the surface of his land preparatory to the erection of a house. Because of the contour of the property the levelling operation created a 10-foot excavation, which, at the top, was 6 inches from the Gerhard line and at the bottom was about 11 feet from the line.
Plaintiff became alarmed for the safety of her property. She protested personally and through counsel. Eventually this suit was commenced.
Upon receipt of plaintiff's protest, Fichter erected a wall composed of stones and some boulders, without cement, referred to as a rip-rap wall. This wall is four feet thick at its *267 base and three feet thick at the top. It is topped by a bank of dirt which slopes up easterly to the property line at a grade varying from 2.87 to 1 to 1.59 to 1. The surface of the bank of dirt is covered with grass and bushes. At the top there is embedded in the bank a cedar board, referred to as a batter board. A similar board is placed half-way down the slope. These boards divert surface waters.
Plaintiff says that her land, with the house on it, is entitled to receive lateral support from the land of the defendant Fichter. She says further that the protection afforded her property is inadequate and she seeks an injunction compelling the defendant to provide proper lateral support for her land.
As set forth in the pretrial order, the issues are as follows:
"1. a. Whether or not as a result of the action of the defendants the plaintiff's land has been deprived of the lateral support to which it is entitled.
"b. If it be determined the defendants have in fact by their actions removed the support to which the land is entitled, what relief & damages, if any, should be allowed as a result of such removal."
There was a third issue which need not concern us since the complaint against the defendant William W. Adams, Inc., was dismissed.
I am in agreement with the proposition that the plaintiff's land with the house on it is entitled to lateral support from the defendant's property. And I also agree that when defendant removed the natural lateral support of plaintiff's land he was under a duty to supply adequate artificial support at his own expense. Manning v. N.J. Short Line R.R. Co., 80 N.J.L. 349 (E. & A. 1910). I am unable to agree, however, that the artificial support provided by the defendant's wall and bank is insufficient. The preponderance of the evidence is to the contrary. Two experts called by the defendant were emphatic in expressing the opinion that the wall and bank were more than adequate to protect plaintiff's property. One of them stated that a slope of 1-to-1 would be safe in view of the character of the soil. And they agreed that a slope of 1.5-to-1 was safe. To this they added the opinion *268 that a collapse of the wall was not likely to occur. Even the plaintiff's expert who expressed doubts as to the sufficiency of the support, testified that a slope of 1.5-to-1 was safe. As already indicated, the slope in question varied between 2.87-to-1 and 1.59-to-1.
In all of the cases cited by the plaintiff in support of her contentions, there was proof of present or threatened damage to property. In most of the cases the action liable to result in a removal of lateral support was in progress. Those cases are not helpful in this situation. The proof here is that the artificial lateral support has been in existence for upwards of a year. There is no further excavating in contemplation. There is no evidence of present damage to the property of the plaintiff nor is there satisfactory proof that damage is threatened.
In my opinion the plaintiff has failed to present facts sufficient to justify interference by the court. There will be judgment for the defendant.