

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-18-00211-CV

———————————————

DAVID D. SCOTT AND MARY J. SCOTT, Appellants

V.

ROBERT G. WEST, THYRA WEST, JUDITH C. CLARK, SALLIE CLINGMAN, GREGORY P. MILLER, GAYE MILLER, JONATHAN BAYLES, AND AMY BAYLES, Appellees

On Appeal from County Court at Law No. 2
Tarrant County, Texas
Trial Court No. 2014-001905-2

Before Sudderth, C.J.; Gabriel and Pittman, JJ.
Opinion by Justice Pittman

## OPINION

Appellants David D. Scott and Mary J. Scott sued four pairs of defendants—Robert G. West and Thyra West; Judith C. Clark and Sallie Clingman; Gregory P. Miller and Gaye Miller; and Jonathan Bayles and Amy Bayles (collectively, the Adjoining Neighbors)—all of whom are their adjoining neighbors.[1] The Scotts sought damages and injunctive relief related to a failing retaining wall (the Retaining Wall), presumably installed decades ago by the original developer of the parties' properties, that separates the Scotts' residential property from the Adjoining Neighbors' elevated residential properties.[2] After the trial court granted partial summary judgment for the Adjoining Neighbors and denied the Scott's motion for partial summary judgment on the question of duty, we granted this permissive appeal pursuant to Section 51.104 of the Texas Civil Practice and Remedies Code to determine the following narrow question of law: whether the Scotts or the Adjoining Neighbors have the legal duty to repair or replace the Retaining Wall.[3] This is a case of first impression in Texas but is of significant

---

[1]The Wests no longer own neighboring property but have indemnified the current owners.

[2]This case brings to mind the wise adage of the great Roman poet and philosopher Horace: "It is your concern when your neighbor's wall is on fire." Horace, Epistles, bk I., xviii, *l* 84 (c. 20 B.C.E.), *reprinted in* John Bartlett, *Familiar Quotations* 109 (Emily Morrison Beck ed., Little, Brown & Co., 15th ed. 1980).

[3]Section 51.104 of the Texas Civil Practice and Remedies Code provides that this court may permit "an appeal from an order that is not otherwise appealable if: (1) the order to be appealed involves a controlling question of law as to which there is a substantial ground for difference of opinion; and (2) an immediate appeal from the

2

importance as a thread in the fabric of Texas property law. We specifically address only the narrow question of whether any party has an *absolute* duty to repair or replace the Retaining Wall.[4] As discussed herein, from our review of the record and the applicable case law, we conclude that no party has such an absolute duty under the law.

## BACKGROUND

After the Adjoining Neighbors declined to pay for part of the Retaining Wall's replacement, the Scotts filed this suit. In their live petition, the Scotts alleged that the Retaining Wall is failing, that it is both falling on and being pushed onto their property, and that it needs to be replaced. They asserted that the Adjoining Neighbors' acts and omissions contributed to the Retaining Wall's failing, including their allowing water to collect behind the Retaining Wall, constructing driveways or other "hardened structures

---

order may materially advance the ultimate termination of the litigation." Tex. Civ. Prac. & Rem. Code Ann. § 51.014(d)(1), (f); *see* Tex. R. App. P. 28.3(a) (providing that when a trial court has permitted an appeal from an interlocutory order that would not otherwise be appealable, a party seeking to appeal must petition the court of appeals for permission to appeal the order).

[4]In addressing the property law question we have undertaken in this permissive appeal, we are mindful of Justice Bushrod Washington's admonition that when a court addresses "questions which respect the rights of property, it is better to adhere to principles once fixed . . . than to unsettle the law, in order to render it more consistent with the dictates of sound reason." *Marine Ins. Co. of Alexandria v. Tucker*, 7 U.S. (3 Cranch) 357, 388 (1806) (Washington, J.); *see generally* Bryan A. Garner et al*., The Law of Judicial Precedent* 421–39 (2016) (explaining that there is "[h]eightened [s]tare [d]ecisis for Rules of Property" and discussing how the law "stresses the importance of reliance interests when dealing with property rights"); *cf.* 2 William Blackstone, *Commentaries* *2 ("There is nothing which so generally strikes the imagination, and engages the affections of mankind, as the right of property.").

near or adjacent to the top of the Retaining Wall that put pressure on the Retaining Wall," and "[a]dding at the top of the Retaining Wall steel posts imbedded into the Retaining Wall, including wrought iron fencing, chain link fence posts[,] and steel posts supporting wood fencing."

The Scotts sought damages from the Adjoining Neighbors and brought causes of action for negligence, trespass, and common law liability for the repair or replacement of the Retaining Wall. The Scotts further alleged that the Adjoining Neighbors' "acts and omissions including, but not limited to, the failure to repair their respective portions of the Retaining Wall, have also created a private nuisance," for which they sought damages and injunctive relief ordering the Adjoining Neighbors to remove and replace the Retaining Wall at their sole expense. The Scotts asserted that the Adjoining Neighbors "each have a continuing duty to maintain, repair, or replace the Retaining Wall as is necessary [1] to provide lateral support to each [Appellee's] property and [2] to prevent the Retaining Wall and the soils and structures supported by the Retaining Wall from encroaching into and onto the [Scotts'] Property."

All parties filed summary judgment motions seeking judgment on, among other issues, the question of whether the Adjoining Neighbors have a strict legal duty to repair or replace the Retaining Wall. On June 8, 2018, the trial court signed an "Order on Motions for Summary Judgment and Certification of Question for Interlocutory Appeal under TRCP 168." *See* Tex. R. Civ. P. 168. That order granted the Adjoining Neighbors' traditional motions for summary judgment **solely** on the basis that the

4

Adjoining Neighbors had no "established legal duty to repair or replace the [R]etaining [W]all," and the order denied the Scotts' motion for partial summary judgment for the same reason.[5] The trial court found that "the question of whether Plaintiffs or Defendants have the legal duty to repair or replace the subject [R]etaining [W]all is the controlling question of law as to which there is substantial ground for difference of opinion, and on which there is no guiding Texas statutory or appellate case law."[6]

The trial court gave permission for this interlocutory appeal and abated the rest of the case pending this court's review. This court agreed to a permissive appeal to address whether the law imposes an *absolute* legal duty for any of the parties to repair or replace the Retaining Wall.[7] For the reasons set forth herein, we conclude that it does not.

---

[5]While the Adjoining Neighbors raised other traditional summary judgment grounds challenging the legal validity of the Scotts' declaratory judgment claims and the merits and validity of the Scotts' specific tort claims, the trial court did not rule on those grounds, and we do not review them in this permissive appeal.

[6]The Millers filed a counterclaim asserting that the Scotts had a duty to provide lateral support to their (the Millers') land but failed to do so. After the trial court granted their traditional motion for summary judgment on the Scotts' claims, they moved to dismiss their counterclaim without prejudice, and the trial court granted the motion. The trial court subsequently withdrew that order and rendered the order now on appeal.

[7]For the sake of brevity, for the remainder of this opinion we leave out the word "replace" when discussing the possibility of a duty with respect to the Retaining Wall.

**DISCUSSION**

In addressing the controlling question of law, we consider applicable duties under both tort law and property law's doctrine of lateral support.

**I.     Tort Law Does Not Impose an Absolute Duty to Repair the Retaining Wall.**

As expressed in the age-old principle of *sic utere tuo ut alienum non laedas*, all property owners have a general duty to not use their own property in a manner that injures the rights of others.  *Orient Ins. Co. v. Daggs*, 172 U.S. 557, 566, 19 S. Ct. 281, 284 (1899) ("'Sic utere tuo ut alienum non laedas,' is of universal and pervading obligation.  It is a condition upon which all property is held."); *Friendswood Dev. Co. v. Smith-Sw. Indus., Inc.*, 576 S.W.2d 21, 24 (Tex. 1978); *see also Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 590–91 (Tex. 2016) (noting that the law of nuisance balances property owners' rights to use their property as they choose "in any lawful way" against their duty not to use it in a way that injures another); *Gulf, C. & S.F. Ry. Co. v. Oakes*, 58 S.W. 999, 1000–01 (Tex. 1900) (noting that under this general duty, one may not intentionally or negligently "cast earth or other substance from his own ground on a neighbor's" but also noting that restricting a lawful use of property requires a balancing of interests).  When the violation of this duty causes an injury, the law may provide a cause of action and, consequently, a remedy; this general duty provides the foundation for some areas of tort law, such as nuisance.  *See Vill. of Euclid, Ohio v. Ambler Realty Co.*, 272 U.S. 365, 387, 47 S. Ct. 114, 118 (1926) (noting the maxim "lies at the

6

foundation of so much of the common law of nuisances"); *City of Houston v. Johnny Frank's Auto Parts Co.*, 480 S.W.2d 774, 777 (Tex. App.—Houston [14th Dist.] 1972, writ ref'd n.r.e.) (same); *Furst-Edwards & Co. v. St. Louis S.W. Ry. Co.*, 146 S.W. 1024, 1028 (Tex. App.—Austin 1912, writ ref'd) (stating that the maxim "indicates to what extent the Golden Rule is also the rule of law in cases of damage by negligence") (reh'g granted on other grounds, May 1, 1912); *cf. Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1031, 112 S. Ct. 2886, 2901–02 (1992) (holding in a takings case that South Carolina could not enjoin the use of property on public nuisance grounds by relying on a conclusory assertion that the property owner's intended use violated the maxim of *sic utere tuo ut alienum non laedas* and instead had to "identify background principles of nuisance and property law that prohibit the uses [the property owner] now intends in the circumstances in which the property is presently found").

In some circumstances, courts have impliedly used this general duty, as expressed in the laws of that state, to impose an obligation on landowners to provide lateral support[8] to their own property after raising the grade of their land. The reasoning is essentially this: when a landowner has no duty to provide lateral support to a higher-elevated adjoining property, then the duty that the owner of the higher property has—to avoid causing harm to the lower neighboring property—imposes on that owner an

---

[8]We discuss the doctrine of lateral support below.

7

obligation to keep the owner's soil from sloughing off onto the lower property.[9] *See, e.g., Kennedy v. Rosecrans Gardens, Inc.*, 249 P.2d 593, 594–95 (Cal. Dist. Ct. App. 1952) (holding that when defendant landowner raised the grade of its land, causing earth and water to be deposited on its adjoining neighbor's now lower-elevated land, the defendant committed trespass, and the plaintiff was entitled to damages or injunctive relief because the harmful results were not trivial). In such a case, the owner of the higher-elevated property must support his or her own property to prevent soil from the higher land from falling, and to that end, courts have sometimes required the owner of the higher-elevated property to build a retaining wall. *See, e.g., Sime v. Jensen*, 7 N.W.2d 325, 327–28 (Minn. 1942) (holding that because an owner who raises his land above the level of adjoining land has no right of lateral support from the adjoining land for the now-elevated soil and is also under the duty to keep the fill soil off adjoining land, a landowner who raises the grade of his lot must build a retaining wall or other structure

---

[9]The Scotts pled that the Adjoining Neighbors had breached a duty to prevent "the soils . . . supported by the Retaining Wall from encroaching into and onto the [Scotts'] property." The Wests' summary judgment motion focused on negating the right of lateral support and whether they had performed or failed to perform any activity that would cause the Retaining Wall to lean. Their motion did not address, much less negate, the existence of a duty, if any, to keep their soil from encroaching on or falling onto the Scotts' property. Clark and Clingman's summary judgment motion also failed to address this duty alleged by the Scotts. Similarly, while the Bayleses' summary judgment motion acknowledged that the Scotts claimed that organic matter from their property was intruding onto the Scotts' property, they focused their argument on whether this organic matter caused the Retaining Wall to fail and not on negating whether they have any duty, as alleged by the Scotts, to keep their organic matter on their own property.

8

if necessary to keep the soil within the owner's property, and the plaintiff in the case was guilty of nuisance and trespass for failing to keep his soil off the defendant's land);[10] *see also Abrey v. City of Detroit*, 86 N.W. 785, 786 (Mich. 1901) (holding that under the maxim *sic utere tuo ut alienum non laedas*, "[w]hen one places a bank on his own land above his neighbor's, he is bound to erect a retaining wall or structure sufficient to keep the dirt from encroaching upon his neighbor's land"); *Tortolano v. DiFilippo*, 349 A.2d 48, 51 (R.I. 1975) (citing *Sime* to hold that a court may require "[a]n owner who alters the grade of his land to a level above his neighbor's" to build a retaining wall on his property because the owner who raises his land "is under a duty to keep the fill used from falling or sliding onto the adjoining parcel," and explaining that "[t]he underlying rationale of this rule is that a landowner who fills his lot above the level of the lot of an adjoining

---

[10]As this case will be remanded and the record further developed, we find it prudent to point out what this narrow opinion does and does not address at this early stage of litigation. In their brief, the Millers distinguish *Sime* on the basis that in that case, the higher-elevated property owner who raised the grade of his lot was a party to that case, unlike here, where it was the parties' predecessors who terraced their properties. The Millers do not address the Scotts' argument that they (the Millers) have a duty, in general, to keep their soil off of the Scotts' land. *See, e.g.*, *Oakes*, 58 S.W. at 1000–01; *Berry v. Fleming*, 83 N.Y.S. 1066, 1067 (App. Div. 1903) (stating the defendant may have had the right to raise the grade of her lot, "but she ha[d] no authority, in doing this, *to occupy any part of the plaintiff's property*" (emphasis added)). *Cf. Crosstex N. Tex. Pipeline*, 505 S.W.3d at 607 (explaining how a claim for private nuisance is asserted under a negligence cause of action and that "a nuisance may result from 'a failure to take precautions against a risk apparent to a reasonable man'" (citation omitted)). Nor do we, because even if the Millers have such a duty, whether the remedy for a breach of that duty is to order them to support their own land or more specifically to repair the Retaining Wall is not a question in this appeal.

9

landowner has no right to lateral support from the latter and the latter cannot be compelled to contribute to the cost of a retaining wall").

Even in these cases, the **duty** is not specifically **to build** a retaining wall. The duty, as expressed through various causes of action, is for landowners to avoid using their property so as to injure another's property—in the cases cited above, by preventing soil from falling onto a neighbor's property. Building a retaining wall or other structure may in some circumstances be the proper method to satisfy that duty. We therefore decline to apply *Sime*, *Abrey*, *Kennedy*, or similar out-of-state cases to hold that under Texas law, the general duty applicable to all property owners imposes an **absolute** duty on either the Scotts or the Adjoining Neighbors to repair the Retaining Wall. Rather, requiring one or more parties to undertake a repair is only a possible **remedy** for a breach of this general duty, not a strict, absolute obligation. What the proper remedy would be upon proof of a breach of this duty depends on the cause of action asserted, the remedies available for that cause of action, and whether the evidence at trial supports a right to a remedy under that cause of action.[11] *See, e.g.*, *Pauli v. Hayes*,

---

[11]The Adjoining Neighbors argued in the trial court that the Retaining Wall is entirely on the Scotts' property, and as such, they cannot have a duty to maintain it. At oral argument, they argued against any duty to maintain the Retaining Wall by asserting that they would have to go onto the Scotts' property to do so and that doing so would constitute a trespass. We do not address the legal merit of that argument. Nor do we determine whether the summary judgment evidence establishes on whose property the Retaining Wall is located. We do, however, point out that the Scotts, in asking for a judgment ordering their neighbors to repair the Retaining Wall, are presumably happy to allow their neighbors access to their land for that limited purpose, should the trial court order the Adjoining Neighbors to repair the Retaining Wall. We further point

No. 04-17-00026-CV, 2018 WL 3440767, at \*9 (Tex. App.—San Antonio July 18, 2018, no pet.) (mem. op.) (stating that permanent injunctive relief may be granted as a remedy for a nuisance but that "the injunction must be narrowly drawn and precise and 'must not . . . be more comprehensive or restrictive than justified by the pleadings, the evidence, and the usages of equity'" (citation omitted)). Thus, for example, while in theory Retaining Wall repair could be imposed on the Adjoining Neighbors if, in breach of a duty, they failed to keep their soil on their own land, *see Oakes*, 58 S.W. at 1000–01, such a repair could only be as a remedy for the breach of that duty. In other words, the requirement to repair the Retaining Wall is not the legal duty itself, but the remedy for a breach of a duty. There is certainly no absolute duty—i.e., one where its breach results in strict liability—imposed by tort law to repair the Retaining Wall.

We granted this permissive appeal merely to determine whether an absolute duty vis-à-vis the Retaining Wall exists, not whether there has been a breach of any duty and, if so, whether the proper remedy is to repair the Retaining Wall. Importantly, we do

---

out that the summary judgment evidence suggested that the footings supporting the Retaining Wall may be under the Adjoining Neighbors' property and that for a new wall to have adequate support, it would likely have to have that support built into the Adjoining Neighbors' land. The Adjoining Neighbors' argument could be interpreted as asserting both that the Scotts would need permission to build the new wall with footings extending into the Adjoining Neighbors' properties and that the Adjoining Neighbors might refuse to grant it. To the extent they take this position we do not address what effect it would have on any remedy the trial court might grant if it finds that a duty exists, that the Adjoining Neighbors have breached that duty, and that a remedy should be ordered.

not determine, and express no opinion as to, whether any party may ultimately be required to provide such a remedy under tort law.

## II. The Doctrine of Lateral Support Does Not Impose an Absolute Duty to Repair the Retaining Wall.

In some cases, property law imposes an absolute duty on landowners to provide support to adjoining land. This duty arises from the doctrine of lateral support. As discussed herein, as with the general tort law duty that property owners may not use their own property in a manner that injures others, the property law doctrine of lateral support does not impose a strict, absolute duty to repair the Retaining Wall on any party.

### A. A Landowner Has an Absolute Right to Lateral Support Provided by Adjoining Land.

The right of lateral support is an established property right under the common law. *See Foley v. Wyeth*, 84 Mass. (2 Allen) 131, 132 (1861) (noting that "[f]ew principles of the law can be traced to an earlier or to a more constant recognition, through a long series of uniform and consistent decisions, than this" doctrine). Through this right, the common law recognizes that while land can be divided for purposes of ownership, the divided tracts remain physically connected to each other, and each tract affects and is affected by adjoining tracts. *See Comanche Duke Oil Co. v. Tex. Pac. Coal & Oil Co.*, 298 S.W. 554, 560 (Tex. Comm'n App. 1927) ("In a sense, one tract of land cannot be used unless there be also consequential use[] of neighboring tracts. This is sequent of that delicate relationship which Nature has imposed upon the tangible and intangible

12

constituents of earth and air."); *see also* Tiffany Real Property § 752, Westlaw Tiffany-RP (database updated Sept. 2018) (observing that "[r]eal estate . . . comprises a portion of the earth [that] . . . extends upward into the air and downward into the soil to an indefinite extent" and "is not a separate and distinct parcel of land, but is, in its natural state, held together, connected and protected by natural forces which have existed from time immemorial").

As part of this physical connection, two connected tracts both provide lateral support to and receive lateral support from each other. Under the common law, each tract owner has the right to have that support maintained and has the corresponding duty not to remove that support from an adjoining neighbor in a way that causes the neighbor's soil to subside. *Williams v. Thompson*, 256 S.W.2d 399, 403 (Tex. 1953) ("[E]ach of two adjoining landowners is entitled to the lateral support of the other's land."); *Comanche Duke Oil*, 298 S.W. at 559 ("[T]here is an area of a sort of common ownership near the boundary and from surface to center of the earth; that ownership being known as the right to 'lateral support.'"); *see* Tiffany Real Property § 752 ("As a general rule, every landowner is entitled to have his soil remain in its natural position, without being caused to fall away by reason of excavations or other improvements which may be made on neighboring land."). This is the right of lateral support. *See N. Transp. Co. v. City of Chicago*, 99 U.S. 635, 645 (1878) (stating that "every land[]owner has a right to have his land preserved unbroken," and therefore a landowner "must not remove the earth so near to the land of his neighbor that his neighbor's soil will crumble

13

away under its own weight"), *abrogation on other grounds recognized by Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 325 n.21, 122 S. Ct. 1465, 1480 n.21 (2002); *Simon v. Nance*, 100 S.W. 1038, 1040 (Tex. App.—Austin 1907, no writ) ("[N]either the adjoining landowner, nor any[]one else, can rightfully remove from the boundaries of the land the supports which hold it in its natural position."); *see also Williams*, 256 S.W.2d at 403 ("[E]ach of two adjoining landowners is entitled to the lateral support of the other's land; this right is one of property necessarily and naturally attached to and passing with the soil.").

"[T]he owner of land[12] has an **absolute** right to the lateral support of adjoining land." *Vecchio v. Pinkus*, 833 S.W.2d 300, 301 (Tex. App.—Fort Worth 1992, writ denied). It thus "does not depend upon the question of due care or negligence."[13]

---

[12]In this opinion, we do not address whether non-owner possessors, such as tenants, have a right to lateral support for property under their possession. Nor do we address the extent to which a non-owner who removes lateral support, such as a contractor acting at the owner's behest, may be liable under this doctrine.

[13]Two Texas Supreme Court cases have suggested that prior use easements— that is, implied easements for improvements across previously-unified adjoining properties—are available for lateral support. *See Drye v. Eagle Rock Ranch, Inc.*, 364 S.W.2d 196, 208 (Tex. 1962) (noting that for a prior use easement to exist, the use of the servient estate "must be necessary to the use of the dominant estate," and listing the need for lateral support as an example of a necessary use); *see also Hamrick v. Ward*, 446 S.W.3d 377, 383–84 (Tex. 2014) (noting the court's discussion in *Drye* of prior use easements for lateral support). Relatedly, some jurisdictions have developed law addressing the lateral support owed by adjoining landowners when one party originally owned the entire tract and subsequently subdivided and conveyed part of the property to the other party. *See, e.g.*, *Bay v. Hein*, 515 P.2d 536, 539 (Wash. Ct. App. 1973). However, whether an easement exists is a separate question from whether the rule of lateral support, with its strict liability, applies. No easement has been asserted here, and

14

*Simon*, 100 S.W. at 1040; *see also Braxton v. Chin Tuo Chen*, No. 06-10-00134-CV, 2011 WL 4031171, at \*5 (Tex. App.—Texarkana Sept. 13, 2011, pet. denied) (mem. op.) (noting *Simon*); *Whitehead v. Zeiller*, 265 S.W.2d 689, 691 (Tex. App.—Fort Worth 1954, no writ) (noting that the right to lateral support "'necessarily and naturally'" attaches to and passes with the land and "is not dependent on any question of care or negligence"). In other words, if soil on a tract of land requires the existing natural support to stay in place, and the owner of an adjoining tract removes that support, the landowner who removed the support is strictly liable for any resulting soil subsidence. *Simon*, 100 S.W. at 1040.

Liability under the doctrine arises only if the removal of lateral support causes the soil to subside.[14] *See id.* at 1040–41 (noting that limitations for a claim based on the

---

we do not discuss a prior use easement's elements or applicability. No party has asked this court to apply similar case law to the facts of this case, and we have not found case law applying those principles to a case in which, as alleged here, the original owner of the larger tract was someone who, rather than conveying part of the land and keeping the rest, was a developer who subdivided and sold the entire property for development.

[14]Because liability arises only upon subsidence, one nineteenth-century commentator argued that contrary to how this right has traditionally been framed, landowners do not truly have an absolute right to support for their soil; rather, they have a "qualified right" to have their soil remain in place. H.G. Wood, *Lateral and Subjacent Support of Lands*, 10 Alb. L.J. 276, 276 (1874). The commentator contended that if the right were for support, the withdrawal of support would result in liability even without the existence of damages. *Id.* But that is not the case; landowners may excavate to their boundary line with an adjoining neighbor without liability, despite removing the neighbor's lateral support, so long as the neighbor's land does not subside. Thus, he argued, "[T]here cannot be said to be an absolute natural right of support." *Id.*; *see also Lasala v. Holbrook*, 4 Paige Ch. 169, 172 (N.Y. Ch. 1833) (stating that the owners of adjacent lots "will not be permitted to destroy my land by removing this

removal of lateral support runs from when the injury occurs, that is when the land begins to slough off); *see also Braxton*, 2011 WL 4031171, at \*6 (upholding summary judgment against plaintiff suing for loss of lateral support when his evidence showed that no injury to his soil had yet occurred); *Wingfield v. Bryant*, 614 S.W.2d 643, 645 (Tex. App.—Austin 1981, writ ref'd n.r.e.) ("Before a party may recover for the loss of lateral support, he must show that his land has been injured."); Restatement (Second) of Torts § 817 cmt. h (Am. Law Inst. 1979) (defining subsidence as the movement of soil from its natural position). Thus, a person removing lateral support from adjoining land may avoid future liability by installing sufficient artificial lateral support, such as a retaining wall. Restatement (Second) of Torts § 817 cmt. i, k; *see, e.g.*, *Gerhard v. Fichter*, 79 A.2d 502, 503 (N.J. Super. Ct. Ch. Div. 1951) (holding landowner not liable for removing lateral support from neighbor's land when he replaced the natural support with adequate artificial support). However, even when a plaintiff is entitled to artificial support, the plaintiff **cannot** necessarily dictate or mandate the type of support provided. *See* 23 James E. Lockhart, Causes of Action 681 § 31 Practice Guide (1990), Westlaw (database updated May 2019); *see also Vennard v Morrison*, 209 A.2d 202, 208–09 (Conn. Cir. Ct. 1964).

---

natural support"); *Richardson v. Vt. Cent. R.R. Co.*, 25 Vt. 465, 471 (1853) ("The injury is, in depriving the owner of a portion of his soil, to which his right [i]s absolute."). We agree that the right, as adjudicated in centuries of case law, is probably more accurately expressed as the right to keep one's land intact.

The right of lateral support runs with the land. *Whitehead*, 265 S.W.2d at 691; *see also Foley*, 84 Mass. at 132. However, this court has held that only the landowner who removed the lateral support may be held liable for damages resulting from its removal, and other courts have generally reached the same conclusion. *See Vecchio*, 833 S.W.2d at 302 (holding that the landowner who removes lateral support is liable, but a subsequent purchaser of the land is not, and citing cases from other jurisdictions supporting this holding); *see also Keck v. Longoria*, 771 S.W.2d 808, 811 (Ark. Ct. App. 1989) ("[T]he general rule does not hold the owner or possessor of property liable for the withdrawal of lateral support unless he is the one who withdraws the support."); *Lee v. Takao Bldg. Dev. Co.*, 175 Cal. App. 3d 565, 569 (Ct. App. 1985) (citing cases from other jurisdictions holding same). Thus, while the right to and duty of lateral support transfers to successive owners of adjoining land, once natural support is removed, liability for that removal remains with the one who removed it and does not transfer to successor owners.[15]

---

[15]While a successor landowner cannot be held liable for subsidence caused by a predecessor's removal of the natural lateral support for adjoining land, other jurisdictions addressing the issue have generally held that a successor landowner is liable for subsidence that results when the successor removes or allows to deteriorate the *artificial* support a predecessor supplied to replace natural support. *See Gorton v. Schofield*, 41 N.E.2d 12, 13–15 (Mass. 1942) (explaining the policy behind holding successor landowners liable for maintaining artificial support); *see also Klebs v. Yim*, 772 P.2d 523, 527 (Wash. Ct. App. 1989) (holding that plaintiffs did not meet their burden of proof to hold the defendant successor landowner liable under the right of lateral support for rebuilding the retaining wall supporting their property); *Noone v. Price*, 298 S.E.2d 218, 222 (W. Va. 1982) (summarizing the "weight of authority" from other jurisdictions holding that "when an actor who removes natural lateral support substitutes artificial

**B. The Right to Lateral Support Applies Only to Soil, and Only to Soil in its Natural State.**

While the right to lateral support is absolute, it applies only to soil in its natural state. As a result, the right to recover under the rule has two important restrictions: (1) improvements have no protection under the rule,[16] and (2) a landowner has no entitlement to support if the need for it exists only because the land has been altered.

**1. The Right of Lateral Support Applies to Soil, Not to Improvements.**

*First*, the right protects soil, not improvements placed on the soil.[17] *See N. Transp. Co.*, 99 U.S. at 645 (stating that the right of lateral support protects only soil, not

---

support to replace it, such as a retaining wall, the wall then becomes an incident to and a burden on the land upon which it is constructed, and subsequent owners and possessors have an obligation to maintain it"); Restatement (Second) of Torts § 817 cmt. k; 1 Am. Jur. 2d *Adjoining Landowners* § 54 (1962), Westlaw (database updated June 2019); *cf. Pecanty v. Miss. S. Bank*, 49 So. 3d 114, 120–22 (Miss. Ct. App. 2010) (stating that landowners are not strictly liable for subsidence from either the removal of natural support of a predecessor in title or the failure of the predecessor's defectively designed and constructed retaining wall but noting that "the weight of authority suggests" that successor landowners may have a duty to maintain a properly-built retaining wall), *cert. denied*, 49 So. 3d 1139 (Miss. 2010). Our opinion in *Vecchio* did not address this question. *See Vecchio*, 833 S.W.2d at 301–02. In this case, we need not decide if either the removal of adequate artificial support or the failure to maintain it gives rise to strict liability under Texas law because we hold below that no party has an absolute duty to provide lateral support to the Adjoining Neighbors' land.

[16]An exception for "ancient buildings" does not apply here. *See Lasala*, 4 Paige Ch. at 173.

[17]In some states, an adjoining landowner can recover under this doctrine for damage to improvements caused by soil subsidence, but only if the weight of the improvements did not contribute to the subsidence—that is, if the soil would have subsided even if no improvements existed on the property. *See, e.g., Farnandis v. Great*

"whatever is placed upon the soil increasing the downward and lateral pressure"); *City of Hous. v. Renault, Inc.*, 431 S.W.2d 322, 324 (Tex. 1968) (noting that "[i]t is settled" that under the common law, the rule of lateral support does not impose strict liability for damages to buildings); *City of Amarillo v. Gray*, 304 S.W.2d 742, 745 (Tex. App.— Amarillo 1957) (op. on reh'g) ("[T]he absolute right to the lateral support of adjoining land without regard to the question of due care or negligence is limited to the soil itself and does not apply to buildings."), *aff'd in part, rev'd in part on other grounds sub nom. City of Amarillo v. Stockton*, 310 S.W.2d 737 (Tex. 1958); *Simon*, 100 S.W. at 1040 (stating that "this absolute right" to lateral support "is limited to the soil itself, and does not apply to buildings or other structures which have been placed upon the land"); *see also McGuire v. Grant*, 25 N.J.L. 356, 362 (Sup. Ct. 1856) (stating that "the cases denying the right of

---

*N. Ry. Co.*, 84 P. 18, 21 (Wash. 1906); 1 Am. Jur. 2d *Adjoining Landowners* § 55 & n.3 (1962), Westlaw (database updated May 2019) (citing non-Texas cases); 50 A.L.R. 486 (see cases cited under section addressing injury not caused by weight of building in absence of statute governing lateral support). This is sometimes referred to as the English rule. *See* Charles G. Thrash Jr., *Right of Lateral Support of Land in Texas*, 8 Sw. L.J. 225, 229–230 (1954). While Texas does not follow this rule, the removal of natural lateral support that leads to damage to improvements can in some cases be actionable in negligence. *See Klostermann v. Hous. Geophysical Co.*, 315 S.W.2d 664, 666 (Tex. App.— San Antonio 1958, writ ref'd) (noting that "[t]he destruction of buildings by the removal of lateral support is compensable under the rules of negligence"); *Simon*, 100 S.W. at 1040 (stating that "the question of negligence becomes an important factor" when a party seeks to recover damages to improvements from the removal of lateral support); *see also In re W. Hills Park Joint Venture*, 587 Fed. App'x 89, 93 (5th Cir. 2014) (applying Texas law and stating that "[i]t has long been held that damages for improvements to land require a finding of negligence"). We do not address whether a party may sue in negligence for injury to improvements caused by the removal or degradation of artificial support installed to replace natural support.

recovery [for injury to buildings] are so numerous, and the modern cases so uniform, that the question must be considered as finally at rest"); Restatement (Second) of Torts § 817 cmt. d; James C. Smith, *Neighboring Property Owners* § 4:4, Westlaw NEIGHBOR (database updated Nov. 2018) (stating that "[t]his rule made a good deal of sense in the agrarian society in which it arose" when land had more value than improvements and noting that the doctrine "has failed to evolve to reflect th[e] reality" that "[w]ith the growth of urban and suburban communities during this century, the relative values of improvements and raw land have changed drastically"). Because the absolute duty to maintain lateral support requires only the support needed by the soil itself, if pressure on the soil from improvements increases the amount of support the soil needs to stay in place, adjoining landowners are not required to provide that additional lateral support. *See McGuire*, 25 N.J.L. at 364 ("[W]here . . . anything has been done to increase the lateral pressure, as where buildings have been erected, . . . no man has a right to such increase[d] support."). Instead, an adjoining landowner needs to provide only as much support to prevent subsidence as would be necessary if no improvements existed.

## 2. Altering Land Cannot Increase an Adjoining Neighbor's Duty of Support.

*Second*, although the right of lateral support protects soil, in some cases land is not entitled to as much support as it needs for its soil to remain in place. The doctrine requires only the amount of support "naturally necessary to maintain another's land in

20

its natural condition."[18]  Restatement (Second) of Torts § 817 cmt. d, g.  Thus, if a landowner excavates or adds fill to the land, the doctrine does not require an adjoining landowner to provide extra support to accommodate the change.  An adjoining landowner has no obligation to provide support beyond that which would have been required without the alterations.[19]  *See Carpentier v. Ellis*, 489 S.W.2d 388, 390 (Tex. App.—Beaumont 1972, writ ref'd n.r.e.) (quoting in 1 Am.Jur.2d *Adjoining Landowners*

---

[18]The treatise *Causes of Action* notes that in some United States jurisdictions, for purposes of the right of lateral support, land's "natural condition" is not necessarily its condition prior to any human alteration.  "Even if the land has been filled or recontoured, some states consider the land to be in its natural state if the alteration occurred long enough ago that the soil has settled and become physically indistinguishable from land in its natural state."  Lockhart, *supra*, at § 5 (Cumulative Supplement) Practice Guide; *see also* 2 C.J.S. *Adjoining Landowners* § 43 (1962), Westlaw (database updated June 2019) (citing *Bradley v. Valicenti*, 138 A.2d 238, 240 (Pa. Super. Ct. 1958), for the proposition that "[e]ven though land is partially filled, the passage of time, the resultant use of the land, and its exposure to the elements may make it ground in its natural condition entitled to lateral support by adjacent property").  This variation of the general rule addresses the common law's evidence problem:  if subsidence does not occur until years after the removal of support, it may be impossible for a party to prove what amount of support a parcel of land was entitled to before its alteration.  *See, e.g.*, *McKamy v. Bonanza Sirloin Pit, Inc.*, 237 N.W.2d 865, 867 (Neb. 1976) (noting that "[n]either side appeared to be able to secure direct evidence about the previous history of the two properties or changes of grade which might have been made during the course of the development" and that plaintiff appellants had the burden to establish that removal of lateral support had damaged their land in its natural state); *see also* Smith, *supra*, § 4:5 (stating that "[a]fter decades, it may be next to impossible to acquire evidence of what a parcel was like in its natural shape, and, accordingly, exactly what alterations were made").  Texas has not adopted this variation of the common law.

[19]We address below the holding in *Carrion v. Singley*, 614 S.W.2d 916, 917 (Tex. App.—Waco 1981, writ ref'd n.r.e.), which reached a different conclusion regarding how improvements or alterations affect the right to lateral support.

21

§ 38 [now § 45] (1962), Westlaw (database updated May 2019), for the proposition that land has no right of lateral support "'where the natural condition [of the land] has been altered through man's activities *so as to create a need for lateral support where none existed* in a state of nature, as where an owner raises the level of his land above his neighbor's adjoining land by filling'" (emphasis added)); 1 Am. Jur. 2d *Adjoining Landowners* § 45, Westlaw (database updated May 2019) ("No duty exists to provide *additional* lateral support to adjoining land that has been filled, raised, or otherwise improved from its natural condition." (emphasis added)); Lockhart, *supra*, at § 3 ("Although the absolute duty to provide lateral and subjacent support is limited to naturally necessary support, alteration of the land neither enlarges nor diminishes this duty.").

## C.    Texas Cases Split on Whether Altering Land Deprives It of All Right to Lateral Support.

Courts have split on the question of whether altering land entirely deprives its owner of its absolute right to lateral support. *See* 1 Am. Jur. 2d *Adjoining Landowners* § 45. As stated, under the common law, a landowner cannot *create* a need for support (for example, by raising the land) and require an adjoining neighbor to provide it. Likewise, a landowner cannot *increase* land's already-existing need for support and require a neighbor to meet that increased need. But is the right of lateral support lost entirely by making alterations to property, even as to the amount needed before alterations were made? The El Paso Court of Appeals says no. In *Salazar v. Sanders*, that court stated, "To the extent the [appellants'] argument could be read as urging that

22

there is no cause of action for loss of lateral support unless the land is in its natural state, it is incorrect." 440 S.W.3d 863, 872 (Tex. App.—El Paso 2013, pet. denied). That court cited no case law to support this assertion, but courts in many other states agree, holding that altered land is still entitled to the same degree of natural lateral support it needed prior to any changes. *See, e.g.*, *St. Louis-S.F. Ry. Co. v. Wade*, 607 F.2d 126, 129 (5th Cir. 1979) (stating, in case applying Alabama law and the Restatement, that "once an owner erects an artificial structure[,] his neighbor . . . continues to have the same duty [of lateral support] as before"; "the duty of lateral support is neither enlarged nor diminished"); *Vikell Inv'rs Pac., Inc. v. Hampden, Ltd.*, 946 P.2d 589, 594 (Colo. App. 1997) ("When land is no longer in its natural state, but has been filled or altered, the entitlement to lateral support from adjoining land is not forfeited, but the landowner is entitled only to the lateral support from adjoining property that the land would have needed in its natural state, before it was filled or altered."); *Sanders v. State Highway Comm'n*, 508 P.2d 981, 988 (Kan. 1973) ("Although land may not be in its natural state[,] a right of lateral support may still be recognized and enforced if the subsidence would have occurred, regardless of the presence or absence of the alterations or additions."); 50 A.L.R. 486 (citing *Stevenson v. Wallace*, 68 Va. ( 27 Gratt.) 77, 87 (1876) for the proposition that "by building on his land the owner does not forfeit his right to have his soil supported . . . , at least if the lateral pressure is not increased by the building"); *see also* Restatement (Second) of Torts § 817 cmt. d; H.G. Wood, *Lateral and Subjacent Support of Lands II*, 10 Alb. L.J. 291, 291 (1874) (stating that

23

"[i]t must not be understood that the right to support ceases to exist when the land is incumbered with a building" and that while the right to support protects only soil, if buildings exist on the land, "a right of action exists for an interference with the right, precisely as much with as without the buildings").

On the other hand, in *Carrion v. Singley*, the Waco Court of Appeals appears to have taken a different approach. 614 S.W.2d at 917. There, Singley sued Carrion after the latter allowed a retaining wall on his (Carrion's) property to deteriorate to the point that it no longer provided support to Singley's land. *Id.* at 916–17. The retaining wall had been built by the developer of their properties, who made changes on both parties' lots. *Id.* at 917. In considering whether Carrion had a duty to replace the retaining wall, the court noted that the right of lateral support "applies only to land in its natural state." *Id.* It then stated that both parties' lots were "excavated by the developer; were cut out and terraced and then portions were filled above the natural grade; and neither remotely resembled the natural state as existed prior to the beginning of construction on the properties." *Id.* Based on these facts, the court concluded, "[D]efendant had no duty to maintain the retaining wall located on his property which provided lateral support to [P]laintiff's land." *Id.* Under a strict reading of *Carrion*, developed land—which would include the residential property in urban or suburban areas—is not entitled to lateral support. *See id.*; Smith, *supra*, § 4.5 (noting that "[m]odern land development often entails extensive site preparation work, in addition to the excavation required for foundations for buildings" and that "[e]ven when site preparation does not involve an

24

extensive degree of landfill, removal of soil, or reordering of the terrain, some grading work is still very often done incidental to the landscaping of the property" and thus "the natural contours of the land surface are inevitably altered to some extent").

*Carrion* cited three cases in support of its statement that "[t]he right of an adjoining property owner to lateral support exists only so far as to require support for his land in its natural state." *Carrion*, 614 S.W.2d at 917. But two of those cases—*Williams* and *Simon*—do not state that land no longer in its natural state is not entitled to any degree of lateral support from adjoining land. *See Williams v. Thompson*, 256 S.W.2d at 403, 405 (noting that the parties were not adjoining landowners and that defendant had the right to grade road adjoining plaintiffs' land under a grant in the subdivision's dedicatory instrument); *Simon*, 100 S.W. at 484 (stating that a landowner has "the right to have his land remain as it was in a state of nature" and that the right of lateral support does not apply to buildings, but not further holding that developed land has no right of support). The third case, *Carpentier v. Ellis* from the Beaumont Court of Appeals, is closer in supporting *Carrion*'s holding but is easily distinguishable from this case and from the usual lateral support disputes in which a landowner has removed lateral support from a neighbor, causing subsidence.

*Carpentier* involved two properties near Lake Livingston. 489 S.W.2d at 389. The parties purchased their lots before the Trinity River Authority filled the lake with water. *Id.* The plaintiffs constructed a retaining wall on the lake side of their lot, and the defendants later constructed a wall on their lot abutting the plaintiffs' wall. *Id.* As the

lake's water level rose, wave action caused the defendants' retaining wall to fall. *Id.* The plaintiffs sued the defendants alleging that with the failure of the defendants' wall, the plaintiffs' wall lost lateral support and subsequently also failed. *Id.*

The *Carpentier* court cited *American Jurisprudence* on the doctrine of lateral support, stating that "[t]he right of an adjoining property owner to lateral support exists only so far as to require support for his land in its natural state from his neighbor's land in its natural state" and that land has no right of lateral support "where the natural condition thereof has been altered through man's *activities so as to create a need for lateral support where none existed* in a state of nature, as where an owner raises the level of his land above his neighbor's adjoining land by filling." *Id.* at 390 (quoting 1 Am. Jur. 2d *Adjoining Landowners* § 38 [now § 45] (emphasis added, internal quotations omitted)). The court noted that "Plaintiffs' and [D]efendants' lots are not in the natural state as when purchased, and obviously it was the filling of Lake Livingston by [the Trinity River Authority] and the wave action which brought about need for lateral support which did not exist before." *Id.* Given the facts of *Carpentier*, the doctrine of lateral support was inapplicable to hold the defendants strictly liable under the doctrine, regardless of whether the plaintiffs had altered their land. *See id.* at 390–91.

While *Carrion*'s cited cases do not provide overwhelming support for its holding, a few courts in other jurisdictions have taken the same view. *See Olson v. Mullen*, 68 N.W.2d 640, 644 (Minn. 1955) ("[T]he right to lateral support exists only when the soil has been undisturbed by act of man."); *Hermanson v. Morrell*, 252 N.W.2d 884,

26

888 (N.D. 1977) ("This right does not apply where the natural condition of land has been altered so as to require lateral support where none was needed before, *or* where buildings or other structures have been placed on the land." (emphasis added)); 1 Am. Jur. 2d *Adjoining Landowners* § 45 (noting that in some jurisdictions, "a landowner does not have the obligation of lateral support with respect to adjoining land where the predecessors in interest of the owners of the adjoining land altered the natural topography").[20]

---

[20]The parties discuss *XI Properties, Inc. v. RaceTrac Petroleum, Inc.*, 151 S.W.3d 443 (Tenn. 2004), in their briefs. In that case, the Supreme Court of Tennessee stated that the principles of the doctrine of lateral support "are not applicable to land that has been altered, such as by additions or construction, so as to require additional lateral support." *Id.* at 448. This language can be read to say that if land has been altered to require additional lateral support, the land is no longer entitled to any amount of lateral support. *See id.* However, two of the cases cited in *XI Properties* to support this proposition—*Williams v. S. Ry. Co.*, 396 S.W.2d 98 (Tenn. Ct. App. 1965) and *Victor Mining Co. v. Morning Star Mining Co.*, 50 Mo. App. 525 (Mo. Ct. App. 1892)—do not directly support it. In those cases, the respective courts stated that the altered land was not entitled to **additional** support needed because of the alterations. *Victor Mining Co.*, 50 Mo. App. at 531–33 (stating that evidence proved that in its natural state, plaintiff's land would not have subsided after defendant's excavations, and that defendant was therefore not required to provide the additional lateral support required by plaintiff's alternations of its land); *Williams*, 396 S.W.2d at 100 (stating that strict liability does not apply when the subsidence is due to additional weight of buildings). Further, *XI Properties* goes on to say that "no duty exists to provide **additional** lateral support to adjoining land that has been filled, raised[,] or otherwise improved from its natural condition" and that "[w]here, as here, a landowner alters his land by filling, thus raising the level of the land above its natural state, there is no right of lateral support from adjoining landowners **with respect to the altered portion** of the land." *XI Props.*, 151 S.W.3d at 448 (emphasis added). Thus, *XI Properties* does not clearly support the proposition that altered land is not entitled to any lateral support whatsoever from adjoining lands.

27

The history and weight of authority on this issue appear to support *Salazar* more than *Carrion*. However, as we note below, for purposes of this opinion, the outcome is the same no matter which view we follow.[21]

## III. Under the Law Discussed Here, No Party Has an Absolute Duty to Repair the Retaining Wall.

Having reviewed the summary judgment evidence and applying the law as discussed above, we can reach only one conclusion: the trial court did not err by granting partial summary judgment for the Adjoining Neighbors and denying partial summary judgment for the Scotts because the doctrine of lateral support does not impose a duty on the Adjoining Neighbors to support their own land.

---

[21]As a practical matter, it often will not matter whether a jurisdiction follows the law as stated in *Carrion* or *Salazar*. Even if land is still entitled to some degree of support, a court cannot hold a party strictly liable for subsidence on land that has been altered without sufficient evidence of both (1) whether, prior to any alterations, the land needed lateral support to prevent subsidence and if so, how much, and (2) the effect of the alterations on the soil. *See* Smith, *supra*, § 4:5 (stating that "[t]he core issue of whether the alteration in fact added to the quantum of support needed is itself a complicated question which almost invariably requires soil testing and the expert testimony of geologists or soil engineers"). Because we do not decide whether *Carrion* or *Salazar* is correct, we do not address the burden of proof in applying *Salazar*. That is, we do not decide whether it is the owner of the property that is suffering soil subsidence and is burdened with improvements or the neighbor who removed the lateral support that led to the subsidence who would have the burden of proof regarding the effect of any buildings on the integrity of the soil. *See, e.g.*, *Vikell Inv'rs Pac.*, 946 P.2d at 594–95 (holding that if a plaintiff whose land is subsiding sues an adjoining landowner alleging the removal of lateral support, there is a legal presumption that weight of buildings, artificial additions, and fill contributed to subsidence of land, and the burden is on the plaintiff to overcome this presumption).

**A.** **Under the Doctrine of Lateral Support, None of the Parties Are Strictly Liable for the Original Removal of Natural Support.**

None of the parties removed the natural lateral support, so none of them can be strictly liable for removing it. *See Vecchio*, 833 S.W.2d at 302. As for liability for failing to repair artificial support—that is, the Retaining Wall—the Adjoining Neighbors concede that the Scotts have no duty to provide lateral support to the Adjoining Neighbors' properties,[22] and the law supports that concession.[23] And as discussed below, neither do the Adjoining Neighbors have such a duty.

---

[22]The controlling question of law submitted by the trial court and accepted by this court asks whether any party has the duty to repair the Retaining Wall. However, the Adjoining Neighbors assert that the doctrine of lateral support does not apply and concede that the Scotts owe no duty under that doctrine. Thus, that part of the question is no longer one "to which there is a substantial ground for difference of opinion." *See* Tex. R. App. P. 28.3(e)(4).

[23]The parties assume that *Carrion* applies, but it would make no difference here if we rejected *Carrion* and agreed with *Salazar*. Assuming that land does not lose its right to lateral support if it has been altered, and even further assuming that a landowner can be liable for removing or failing to maintain artificial lateral support that a predecessor installed when removing the soil's natural support, the trial court could not impose a duty on the Scotts under the doctrine of lateral support without proof that the doctrine applies. None of the summary judgment evidence established (or even raised a fact issue about) whether, prior to the terracing of the parties' land (and the improvements presumably added by the Adjoining Neighbors' predecessors), the Adjoining Neighbors' soil would have subsided upon removal of the natural lateral support and, if so, how much support the soil on the Adjoining Neighbors' properties needed to avoid subsiding. None of the parties produced evidence of when natural support was removed from the Adjoining Neighbors' properties (other than that it was before any of the parties bought their properties), if the properties were terraced by the area's developer (although they assume it was), if the developer installed the Retaining Wall, or if the developer did so to replace natural support the developer removed. No evidence raised a fact issue, much less established, how the alterations of both sides' land affected the Adjoining Neighbors' soil subsidence. Accordingly, even if Texas land

29

**B.** **No Party Has An Absolute Duty to Maintain Artificial Support Because the Right of Lateral Support Protects Only Landowners' Right to Their Own Soil.**

To hold that the doctrine of lateral support imposes an absolute duty on the Adjoining Neighbors to repair the Retaining Wall would require us to hold that the doctrine can apply to require a landowner to provide lateral support to that landowner's own soil to prevent its soil from subsiding onto a neighbor's land. We decline to apply the doctrine in that manner. The right of lateral support is a property right. Its purpose is not to protect a landowner from trespass or some other unwanted intrusion by another's soil. Its purpose is to protect landowners' absolute right to *their own* soil. That is the injury from which the doctrine provides protection. *See Gilmore v. Driscoll*, 122 Mass. 199, 201 (1877) ("[I]n the case of land, which is fixed in its place, each *owner* has the absolute right to have *his* land remain in its natural condition, unaffected by any act of his neighbor.") (emphasis added)); *Richardson*, 25 Vt. at 471 ("The injury is, in depriving the *owner* of a portion of *his* soil, to which his right [i]s absolute." (emphasis added)). We decline to apply *Sime* or other similar cases to create an extension of the right of lateral support. As we noted above, the holdings in those cases are the result of declining to impose the right of lateral support on lower-elevated landowners while recognizing the more general duties owed by a landowner to neighboring landowners.

---

does not lose all right to lateral support when it is altered, the law supports the Adjoining Neighbors' concessions. *See Carpentier*, 489 S.W.2d at 390.

30

*See, e.g.*, *Sime*, 7 N.W.2d at 327 (holding that landowner who raised his land and failed to keep the fill off the adjoining property was guilty of nuisance and trespass ). Because the Adjoining Neighbors have no duty under the doctrine of lateral support to support their own land, that doctrine imposes no absolute duty on them to repair the Retaining Wall.[24]

## CONCLUSION

Having overruled the Scotts' sole issue, we affirm the trial court's summary judgment order. We remand this case to the trial court for further proceedings.

---

[24]Recognizing that the doctrine of stare decisis applies with "peculiar force and strictness" to decisions involving real property and because the question of law addressed in this opinion has important ramifications to Texas's property law jurisprudence, we encourage the Supreme Court of Texas to consider examining this holding in order to provide uniformity and clarity on this subject to all Texans. *See Abbott v. City of L.A.*, 326 P.2d 484, 494–95 (Cal. 1958) (en banc) (internal quotation marks and citations omitted); *see also Friendswood Dev.*, 576 S.W.2d at 29 ("The doctrine of [s]tare decisis has been and should be strictly followed by this Court in cases involving established rules of property rights."); *Southland Royalty Co. v. Humble Oil & Ref. Co.*, 249 S.W.2d 914, 916 (Tex. 1952) (stating that when a court reviews property rights, previously established rules "should not be changed in the absence of other controlling circumstances, even though good reasons might be given for a different holding" (quoting *Tanton v. State Nat'l Bank of El Paso*, 79 S.W.2d 833, 834 (Tex. 1935)); *cf. Envtl. Processing Sys., L.C. v. FPL Farming Ltd.*, 457 S.W.3d 414, 419 (Tex. 2015) ("Examining our historical treatment of trespass is important because we adhere to prior decisions that have established rules relating to property rights unless, or until, the Legislature modifies those rules.").

/s/ Mark T. Pittman  
Mark T. Pittman  
Justice

Delivered:  July 3, 2019